## NORTH LOUISIANA CLINIC v. BREEN
### et al.
### No. 5825.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Rehearing Denied in Part and Granted in Part April 28, 1939.

On Rehearing Nov. 3, 1939.

Simon Herold, of Shreveport, for appellant.

Wilkinson, Lewis, Wilkinson & Naff, Hoye Grafton, and E. W. & P. N. Browne, all of Shreveport, for appellees.

DREW, Judge.

The North Louisiana Clinic, an ordinary partnership, instituted this suit against John W. Breen, the Southern Transportation Company, Incorporated, and the Commercial Standard Insurance Company to recover the sum of $169, with legal interest thereon from September 20, 1936, until paid. It alleged that J. W. Breen was injured in an accident while engaged in the performance of his duties within the course

and scope of his employment with the Southern Transportation Company, Inc., which business was classed as dangerous and hazardous under the Workmen's Compensation Law of Louisiana; that the accident in which Breen was injured occurred on April 8, 1936, and he was immediately taken to the North Louisiana Sanitarium in Shreveport, Louisiana, and treated by Dr. R. P. Googe; that while being treated in the sanitarium by the North Louisiana Clinic, the said Breen received weekly compensation from the Commercial Standard Insurance Company, the workmen's compensation insurer for the Southern Transportation Company, Inc.; and that about December 17, 1936, Breen filed suit for compensation against the Southern Transportation Company, Inc., in the district court in and for Caddo Parish, Louisiana.

On and about February 9, 1937, a compromise settlement was entered into and approved by the court between Breen, the Transportation Company and its insurer, whereby Breen was paid $850, which was compensation at the rate of $10.40 per week for 81 weeks.

Plaintiff further alleged that the Compensation Act of this state provides "the employer shall in every case coming under this act furnish reasonable medical, surgical and hospital service and medicines not to exceed $250.00 in value * * *." It is further alleged that plaintiff rendered services to Breen from the date of accident until September 20, 1936, and has received no payments; that for doctors' services rendered and medicines to the said Breen it is entitled to $158.50, and that the claim for the hospital bill during that time and due to the North Louisiana Sanitarium for $10.50 has been assigned to the plaintiff herein. It prayed for judgment in solido against the three defendants.

Defendant Breen excepted to the petition on the ground that it set forth no cause or right of action against him. On the same day, he filed an answer in which he denied being indebted unto plaintiff in any amount. He admitted all other material allegations of plaintiff's petition. He alleged that the services rendered and medicines furnished him by plaintiff were at the instance of and request of his employer and its insurer, and that all statements of the account, as well as the medical reports of his condition, were rendered to his employer and its insurer; and that no statement has ever been rendered him by plaintiff or any demand for payment made.

The Southern Transportation Company, Inc., filed a plea to the jurisdiction ratione materiae.

At this stage of the case, plaintiff filed an amended and supplemental petition in which it alleged that it had inadvertently omitted from the original petition the allegation that the treatment rendered to said Breen by plaintiff was done at the request and with the consent of the Southern Transportation Company; that said company knew from the date of the accident that Breen had been treated at the North Louisiana Sanitarium by members of plaintiff Clinic, and that part of the amount due is for emergency services rendered; that at various times during the period of the treatment of Breen, both the Transportation Company and its insurer asked for and received from plaintiff reports as to his condition, and that while receiving these reports, neither company denied liability for the services rendered.

In a second supplemental petition, plaintiff alleged that the North Louisiana Sanitarium and plaintiff have on numerous occasions treated and rendered services to employees of the Southern Transportation Company, Inc., who were injured in the course of their employment and that both have always been paid for their services to said employees prior to this time.

Breen answered the supplemental petition admitting the allegations thereof.

The Commercial Standard Insurance Company excepted to all petitions of plaintiff on the ground that they neither set forth a cause nor right of action against it.

The Southern Transportation Company, Inc., excepted to the supplemental petition for the alleged reason that it changed the issues in the suit; that its original suit was predicated upon the provisions of the Workmen's Compensation Act, and that in any event it is entitled to know the name of the officer or representative of the Transportation Company who requested the medical treatment or consented thereto, and that it is entitled to a bill of particulars in this regard.

In answer to the motion for a bill of particulars, plaintiff alleged:

"1. That on April 8, 1936, the date upon which J. W. Breen was injured and brought to the North Louisiana Sanitarium,

a telephone call was made by an employee of the North Louisiana Sanitarium to the office of the Southern Transportation Company, in Shreveport, Louisiana. When the employees of the North Louisiana informed the person to whom she was talking in the office of the Southern Transportation Company that J. W. Breen had been injured in an accident, she was told to send the notice of the said accident to the Texas Fire & Casualty Company.

"2. A letter was written by the North Louisiana Sanitarium to the Texas Fire & Casualty Company on April 9, 1936, and a reply was received stating that the insurance which the Texas Fire & Casualty Company carried for the Southern Transportation Comany had been cancelled in November, 1935.

"3. The local office of the Southern Transportation Company advised the North Louisiana Sanitarium to send the bill for services rendered to Breen to H. J. Jones, General Manager, Southern Transportation Company, 2817 Canton Street, Dallas, Texas.

"4. The sanitarium was then told to notify the Commercial Standard Insurance Company and they did so on August 7, 1936."

The Southern Transportation Company filed answer in which it admitted its corporate status and domicile, as alleged; denied it was indebted unto plaintiff in any amount; admitted the hazardous nature of its business and that J. W. Breen was in its employ; denied Breen was injured as alleged; denied he was immediately carried to the North Louisiana Sanitarium; admitted he received compensation payments while being treated by plaintiff; and admitted that suit was filed for compensation and settled by compromise as alleged; admitted amicable demand was made on it by plaintiff. It denied that the sanitarium's claim was assigned to plaintiff and alleged that a claim arising under the Workmen's Compensation Act is non-assignable. It denied each and every allegation of the supplemental petition. It admits receiving notice from plaintiff of the injury to Breen on the day of the accident, and admits it instructed plaintiff to notify the insurance company, defendant herein. It denied the allegations of the second supplemental petition.

Further answering, it alleged that the issue of its liability for compensation has been decided and adjudicated by the First District Court in the proceedings wherein the compromise settlement was approved by that court, in which proceedings the court rendered a judgment covering the full amount due by respondent to said Breen and to all other parties; and that the judgment has been paid and its liability fully discharged.

The lower court sustained the exceptions of no cause and no right of action as to the insurance company; therefore, no answer was filed by it. It does not appear from the minutes of the court that any of the other exceptions and pleas were tried or passed upon by the lower court. It rendered judgment rejecting plaintiff's demands as against the Southern Transportation Company, Inc., and awarded plaintiff judgment against J. W. Breen, as prayed for.

A rehearing was granted to Breen and the lower court reversed its former opinion as to him, and therefore rejected plaintiff's demands as to all defendants. Plaintiff has perfected an appeal to this court.

The record discloses that J. W. Breen was injured while performing duties in the course and scope of his employment with the Southern Transportation Company, Inc., and that the hazardous nature of its business brought it under the Workmen's Compensation Act of this state. The injury to Breen was caused by an accident on April 8, 1936, and he was immediately taken by an employee of the Leonard Truck Lines (in no way connected with defendants) to the North Louisiana Sanitarium where he was given treatment. The amount of the bill for treatment and hospitalization is not disputed. Dr. Herold, an officer of plaintiff Clinic, on the day Breen was brought to the sanitarium, learned from him that he was in the employ of the Southern Transportation Company, Inc. The office of said company in Shreveport, which is a branch office, was called by telephone and whoever answered the phone there was notified that Breen was in the sanitarium. At that time Dr. Herold inquired as to whom the report should be sent, and was informed that it should be mailed to the Texas Fire & Casualty Company, which was done the following day; and from it plaintiff learned that it was no longer the insurer of the Southern Transportation Company. He then got in contact with Breen's employer and was advised to report to Mr. H. J. Jones, Agent, 2817 Carter Street, Dallas, Texas. This

was done. Soon thereafter a Mr. Smith, connected with the Commercial Standard Insurance Company, called at the sanitarium. After that time reports as to the condition of plaintiff were made to the defendant insurance company and the Southern Transportation Company, Inc.

Dr. Herold testified that he had prior to the Breen case rendered services to other employees of the Southern Transportation Company, Inc., two or three in number, and had been paid for his services. He wrote several letters to the Transportation Company in regard to this case and never received a reply. He further testified that he had requested the attorneys in the case to notify him whenever they got together to compromise the case, but that he was not notified and was not present.

Dr. Herold further testified as follows:

"Q. Is it not a fact that it was alleged in your petition that the Commercial Standard Insurance Company understood to have that treatment made, or is that true? A. I do not know. The only thing that I can say is that they sent their representative here on two occasions and inquired about Mr. Breen's case, other than that I am not prepared to say that the Company undertook to pay the obligation. Did not say they would pay it, we presumed they had a right to as they carried the insurance.

"Q. You know that they paid some compensation? A. Yes, sir.

"Q. You did look to that Company to pay the medical bills and brought suit against the Company? A. We thought they would, they carried the insurance."

Dr. Herold further testified that he and other members of the Clinic were called upon by representatives of the Transportation Company and of the Insurance Company to report Breen's condition. No report was ever given to Breen.

C. P. Thornhill testified that he or R. H. Grim were the only ones authorized to bind the Southern Transportation Company for any debt. He saw all the reports and letters sent by the sanitarium and Clinic, however, did not reply to them, but turned them over to the insurance company. He considered them merely reports; never asked for one, and no representative of his company was authorized to ask for a report; that his company had not in over four years paid any hospital or medical bills for any of its employees who were injured and had not received any bills of

that kind; that he never consulted with any of the doctors, members of plaintiff Clinic, about Breen; his company did not request or authorize the treatment given to Breen by plaintiff and the hospital; and that Mr. Harbuck, who was in charge of the local office, was without authority to bind defendant Transportation Company for the amount claimed by plaintiff or for any amount.

Mr. Harbuck testified that he had no authority in a case of this kind other than to report it to the main office in Dallas.

This is a fair resume of all the testimony, other than the reports and letters from plaintiff to the defendants, Transportation Company and its insurer. Reports were made to the Southern Transportation Company on June 20th and July 25th, 1936; and to the Commercial Standard Insurance Company on August 19, 1936. Also enclosed with this report there are copies of former ones made to the Transportation Company. There are other letters demanding payment of the claim sued on here.

It is quite evident that plaintiff does not contend that defendant Breen owes it anything. It never sent him a bill or demanded payment of him. It never gave to him a report of his condition. It was working on the assumption at all times that the other defendants were liable for the expense of the treatments. We therefore see no reason to disturb the judgment as to defendant Breen.

Defendant Transportation Company has not urged any of its exceptions and pleas filed below. They were not passed on there and we consider them abandoned here.

Plaintiff's claim against the insurance company is based upon Section 8, subparagraph 5 of the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, as amended by Act No. 242 of 1928, § 1), and upon the allegation that the insurance company asked for and received reports as to the condition of Breen. This defendant was dismissed from the suit when the court sustained its exception of no cause and no right of action. However, since the discussion of the same question will be necessary in determining the case as to the other defendant, we will discuss them together.

In this court, plaintiff is basing its right to recover upon either of two grounds, viz: (1) Act No. 20 of 1914, Section 8,

sub-section 5, as amended; and (2) implied contract. It no longer contends there was an express contract.

That part of the compensation act above set out reads as follows: "The employer shall in every case coming under this act, furnish reasonable medical, surgical and hospital services and medicines not to exceed $250.00 in value, unless the employee refuses to allow them to be furnished by the employer, and in every case of death, the employer shall pay or cause to be paid reasonable expenses of the burial of the employee, not to exceed $100.00 and the reasonable contingent expenses in connection therewith not to exceed $50.00."

■ Our interpretation of the compensation statute of this state (Act No. 20 of 1914, as amended), prior to 1924, is that the employee alone or his dependents were authorized to institute suit to recover hospital and medical bills provided for under said act. Act No. 126 of 1924 amended the Charity Hospital Act, and permitted it to charge employees under the Employers' Liability Act for services rendered them. It also amended the Employers' Liability Act by authorizing the Hospital to demand directly from the employer the value of the services rendered the employee. This act does not attempt to include any other than charity hospitals. The reason for and the purpose of the act is fully set forth in Charity Hospital v. Meyeaux, 8 La.App. 264. In this decision the Orleans Court of Appeal interpreted the act as to the right of others to sue for medical and hospital bills other than the employee, as we do here. Since Act 126 of 1924 only extends the right to sue for hospital and medical expenses to charity hospitals, we are not authorized to include within its provisions private hospitals.

The above cited act makes it the duty of the authorities governing the hospital to give notice to the employer or the insurance company in such cases that the patient is being treated and that charges will be made therefor in all such cases. Under no circumstances could any less duty be required of a private hospital.

In the case at bar, the employee was not sent to plaintiff's institution by his employer. It is true that the plaintiff did immediately notify the employer that the patient was there and being treated, but at no time until after he was discharged as well did plaintiff notify defendants that it was expecting them to pay for the services rendered.

■ We conclude, therefore, that the provisions of the Employers' Liability Act of this state do not in themselves authorize a suit by a private hospital or clinic to recover from the employer and insurer for medical services and hospitalization rendered an employee under the Workmen's Compensation Law; and if plaintiff is entitled to recover in this suit, it will have to be under the doctrine of implied contract. There was no express contract.

Plaintiff cites and quotes from several cases from other jurisdictions, similar in some respects to the one at bar, in which recovery was allowed. They are as follows:

Hyman v. Hudson Contracting Company, Inc., 152 Misc. 7, 272 N.Y.S. 670, is not in point for the reason that in that case there was an express contract of employment to render services made by the employer's insurer with the doctor. The facts are entirely different from the case at bar.

Myers v. Industrial Accident Commission et al., 191 Cal. 673, 218 P. 11, is a suit which the injured employee instituted in his own name, for compensation and medical bills. The case involves the interpretation of the California statute, the provisions of which are different from our statute, regarding the furnishing of medical services to an injured employee.

Case of Ripley, 229 Mass. 302, 118 N.E. 638. This case throws very little light on the question before us. The suit was filed by the employee and an appeal taken from the judgment directing the insurer to pay to two physicians certain sums for medical services rendered the employee. The facts stated in the short opinion are that the employee was treated by the two physicians with the express consent of his foreman, who called the physicians to treat the employee.

Bucyrus Company v. Reisinger, 77 Ind. App. 361, 133 N.E. 516. The employee filed this suit. The right of a doctor or hospital to sue is not involved in the case. However, the decision does hold that the statute requiring the employer to furnish medical services is mandatory in form.

Trustees of State Hospital of Middle Coal Field of Pennsylvania v. Lehigh Valley Coal Company, 267 Pa. 474, 110 A. 255, 256. This is a case, as the title indicates, where a hospital sued the employer for

services rendered an injured employee under the Workmen's Compensation Act (77 P.S. § 1 et seq.). The court held the employer liable under the doctrine of implied contract. In the course of the opinion, the court said:

"The case stated stipulates that the employés of defendant treated at the hospital had been injured in the course of their employment, 'and by permission of the defendant were removed to the plaintiff hospital for treatment.' No formal application to defendant for medical service was made by the injured employés, and hence no refusal on the part of the employer to furnish treatment, but by giving permission to move the injured person to plaintiff hospital and acquiescing in such removal defendant must be deemed to have acted in performance of its duty to furnish reasonable medical aid and hospital service, especially as we find nothing to indicate an offer by defendant to personally, through its own facilities, furnish such service. The wording of the act is that employers 'shall furnish' such service.

"In view of this mandatory provision, and defendant knowingly permitting its employés to be moved to the hospital without objection, it must be held to have adopted this method of performing the duty imposed upon it by law; consequently no formal application by the employé for assistance was necessary as a condition precedent to liability. The employer's duty is to 'furnish' medical aid, and not merely to reimburse the injured employé after the service has been procured elsewhere. Had this been an action by the employé based on defendant's refusal to furnish aid, the latter might well set up the facts agreed upon as a complete performance of its duty under the act. The employer, in lieu of furnishing the service required by the act, having acquiesced in the removal of the injured employés to plaintiff hospital for care and treatment, adopted this method of performing its statutory duty, and at once there arose an implied obligation on its part to pay plaintiff for such service."

In the case of Moore v. Derees, 97 N.J. L. 378, 117 A. 480, 482, a doctor sued the employer for medical services rendered an employee. The court denied the claim, holding that the employee alone must bring the suit. In the course of its opinion it said: "All possible care seems to be taken to protect the employee, even against the insolvency or death of his employer. The provision for enforcement in the name of employees clearly negatives any right to enforcement in the name of a creditor of the employee, as is the present case. The employee must bring the suit even though he may be under a moral obligation to expend the money recovered for the purpose for which the statute provides it. The employer and the insurance company are entitled to deal with the employee and not be subjected to an action by strangers, which would deprive them of the estoppel of a judgment in their favor."

We have concluded that the employee, Breen, was the only person authorized by the act to sue for medical and hospital fees. When he filed suit for compensation against defendant, he did sue for such fees in the amount of $250. The suit was settled by compromise and a judgment of court rendered and signed. The judgment provides that upon defendants' paying the amount of the judgment, namely, $850, said defendants "shall be fully and completely discharged and released from any and all liabilities, claims, damages, expenses or costs of whatsoever nature connected with or growing out of the injury to J. W. Breen, as alleged in his petition filed herein; that upon such payment, full and complete acquittance and discharge be given to the Southern Transportation Company, Inc., and the Commercial Standard Company". The judgment was paid and Breen signed a written acquittance and discharge to said defendants.

It is an evident fact that the employee was not sent to plaintiff's hospital or Clinic by defendants or either of them, or any of their employees. At least the emergency treatment was administered to the employee before either defendant knew he had been injured. After they had knowledge that the employee was being treated by plaintiff, they, on one or two occasions, requested reports as to his condition. They were not informed that plaintiff was expecting them to pay for the treatment and they were not asked to pay until after the treatment had ceased and the employee was again well. Without knowing plaintiff was expecting them to pay for the services rendered their employee, it did not become necessary for them to inform plaintiff that they did not intend to pay. Defendants' acts were not sufficient to constitute an implied contract to pay for the services rendered by plaintiff. Plaintiff was careless in not having or securing a contract

with someone to cover the services rendered. For its failure to do so, it has no one to blame but itself.

The judgment of the lower court is correct and is affirmed with costs.

### On Rehearing.

This case is before us on rehearing. The issues and facts of the case are fully set forth in the original opinion of this court wherein the demands of plaintiff were rejected as to all three defendants.

Plaintiff applied for a rehearing and for the first time seriously urged that it was entitled to judgment against defendant J. W. Breen. Thinking we might have been in error as to that part of the former judgment, we granted a rehearing, limiting it to the claim against J. W. Breen. We have carefully reviewed the record again and are now convinced that our former conclusions were correct.

When the lower court first decided the case, it rejected plaintiff's demands as to all defendants except J. W. Breen, and rendered judgment against him. He applied for a rehearing and by agreement of counsel for both plaintiff and defendant, the rehearing was granted and judgment rendered rejecting plaintiff's demands against Breen.

On the trial of the case below Dr. Herold, president of plaintiff clinic, made it clear by his testimony that plaintiff was looking only to Breen's employer and its insurer for pay for any services rendered to Breen. Plaintiff contended in its pleadings that Breen's employer and its insurer are bound for the bill for services rendered by express contract. Later in the case it abandoned the express contract claim and relied upon an implied contract with the employer and its insurer. It never attempted to prove any contract with Breen. It is clear that plaintiff at no time looked to Breen for payment of services rendered him. It made no report to him relative to his condition or treatment. It treated him entirely as a charge of the other two defendants to whom it looked for pay for its services.

It is certain plaintiff cannot recover against Breen under contract, which is the alleged basis of its suit against the other two defendants. And certainly under the pleadings and evidence in this case it cannot recover against him under quantum meruit, for if the pleadings could be held to be sufficient upon which to base such a judgment, the evidence is wholly insufficient for that purpose.

It therefore follows that the former opinion and judgment of this court is reinstated and made the final judgment of the court.